UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE D. PLUMB,

        Plaintiff,

v.                                         CIVIL NO. 04-72902
                                         HON. LAWRENCE P. ZATKOFF

JOHN E. POTTER, Postmaster General,
United States Postal Service,

        Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 24, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment filed on August 15, 2005. Plaintiff has responded to Defendant's motion, and Defendant has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the

briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II.  BACKGROUND

In May of 1993, postal employee Larry Jasion came to the Dearborn post office with a gun and shot several employees, including Plaintiff, who was a supervisor at the Dearborn Vehicle Maintenance Facility ("VMF"). Plaintiff was not fatally wounded, and returned to work within days of the shooting. Plaintiff alleges that the district manager, Vernita Martin, blamed the incident on his managerial style. According to Plaintiff, Martin compelled him to go on workers' compensation leave, and suggested that he stay on it indefinitely. Martin then reassigned Plaintiff to the Detroit VMF as a Vehicle Maintenance Specialist, a non-managerial position.

Plaintiff, a 56 year-old white male, filed an EEO complaint alleging that Martin had racially discriminated against him. Plaintiff and the Postal Service entered into a settlement agreement in May 1994. The Postal Service agreed that Plaintiff's Vehicle Maintenance Specialist position would not be eliminated, and Plaintiff agreed to not seek a managerial or supervisory position in the Dearborn VMF or the Dearborn Post Office. The agreement said nothing about Plaintiff seeking a managerial position outside of Dearborn.

In September of 2000, a vacancy announcement was posted for the position of Manager of Detroit Vehicle Maintenance. The Manager is responsible for supervising all the VMFs in the district. The Manager of Detroit Vehicle Maintenance is selected by the Manager of Operations Program Support. Deborah Jarvi was the Manager of Operations Program Support during the period in question. Two employees applied in response to the announcement, Plaintiff and Fred Carmichael, a 50 year-old white male. Jarvi interviewed both applicants on December 7, 2000.

Jarvi rated Carmichael as a better applicant than Plaintiff, but believed there were other candidates more qualified than either applicant. Accordingly, Jarvi requested that the vacancy announcement be re-posted. In August of 2001, the vacancy announcement was re-posted on a nation-wide basis.

Four new applicants applied for the position; Plaintiff and Carmichael were not required to reapply. One of the new applicants was Nancy Esparza, a 54 year-old white female. While these applications were pending, USPS Headquarters required the vacancy announcement to be posted for a third time in November, 2001. Two area offices had been closed, and USPS Headquarters wanted to allow affected employees a chance to apply for the position. This time all previous applicants were required to reapply.

Only three applicants applied for the position: Plaintiff, Carmichael, and Esparza. All three candidates had served as acting Manager of Detroit Vehicle Maintenance on a temporary basis. Jarvi interviewed the applicants on January 9, 2002. Lee Ward, an African-American male from the Human Resources Department, was present during the interviews to ensure that proper procedures were followed. Ward was not involved in the selection decision, but noted that Plaintiff was less engaging than the other two candidates, and did not answer questions as thoroughly as they did. Defendant's Exh. 6 at 16.

Jarvi ranked Esparza as the strongest candidate, followed by Carmichael and then Plaintiff. Jarvi ranked the candidates based on their applications, their performances while temporarily assigned as acting Manager of Detroit Vehicle Maintenance, and their interviews. Defendant's Exh. 5 at 78. Jarvi noted that Plaintiff and Carmichael had more background in technical areas than Esparza, but Esparza did have some technical experience in VMF operations, and had extensive managerial experience. In addition, Jarvi felt Esparza had performed the best as acting Manager of

3

Detroit Vehicle Maintenance.  Defendant's Exh. 36.

On January 30, 2002, John Talick, the Manager of the Detroit District, approved Jarvi's selection of Esparza.  On February 4, 2002, Esparza, Plaintiff, and Carmichael were notified of the selection.  On May 9, 2002, Plaintiff filed an EEO complaint alleging that his non-selection was based on his gender and age, and in retaliation for his previous EEO activity.  On May 5, 2004, the Postal Service issued its final agency decision finding no discrimination or retaliation.  On July 30, 2004, Plaintiff filed the current suit.  Plaintiff alleged three counts: gender discrimination, age discrimination, and retaliation.  Plaintiff has agreed to dismiss the age discrimination claim.  Plaintiff's Response at 1.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of

material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

**1.     Gender Discrimination**

Title VII provides, in pertinent part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can show gender discrimination by direct or circumstantial evidence.  *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828-29 (6th Cir. 2000).

Plaintiff claims he has presented direct evidence of gender discrimination.  Plaintiff points to an incident that occurred in September 2001.  Plaintiff claims that after hearing a female had received a position in the VMF, Jarvi commented "we need more diversity, we don't have enough women around here."  Plaintiff's Exh. C at 40.  Jarvi admitted she may have said words to that effect.  Plaintiff's Exh. C at 88.  However, this incident does not rise to the level of direct evidence of gender discrimination.

The Sixth Circuit has held that direct evidence of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). If the evidence requires the trier of fact to make an inference, it is not direct evidence. *Laderach*, 207 F.3d at 829. Jarvi's statement does not require the conclusion that Jarvi discriminated against Plaintiff. Taken in its worst possible light, Jarvi's statement meant that she preferred to work with females. From this premise, two inferences are necessary to reach the conclusion that Jarvi discriminated against Plaintiff. First, the trier of fact must infer that Jarvi's personal preference for female employees causes her to generally discriminate against males in violation of federal law. Second, the trier of fact must infer that this general tendency caused her to discriminate against Plaintiff. Because the trier of fact would have to make these inferences, Jarvi's statement does not constitute direct evidence that she discriminated against Plaintiff.

When the plaintiff relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis is used. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). The Supreme Court has described the process as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dept. of Cmmunity Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citations omitted).

To establish a prima facie case in the failure to promote scenario, "a plaintiff must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3)

that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). However, because Plaintiff is a male claiming gender discrimination, this is a reverse discrimination case. *See Yeager v. GMC*, 265 F.3d 389 (6th Cir. 2001). In the reverse discrimination scenario, "to satisfy the first prong of the prima facie case, the plaintiff must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (quotations omitted). In addition, "[t]o satisfy the fourth prong in such cases, the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Id.*

Plaintiff has established the first prong of the prima facie case. In *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249 (6th Cir. 2002), the Sixth Circuit found background circumstances sufficient to establish a prima facie case of reverse discrimination where the plaintiff was white and the person in charge of hiring was an African-American. *Id.* at 257. In the current case, Plaintiff is male, and a female, Jarvi, was in charge of Plaintiff's promotion. Thus, Plaintiff has shown background circumstances sufficient to establish the first prong of the prima facie case.

Plaintiff has also established the second prong. While Defendant claims Esparza was more qualified than Plaintiff, Defendant does not deny that Plaintiff was qualified for the position. Plaintiff has also established the third prong; he was considered for and denied the promotion.

However, Plaintiff cannot establish the fourth prong. The Sixth Circuit has held that:

> "In order for two or more employees to be considered similarly-situated for purposes of creating an inference of disparate treatment in a [reverse discrimination case], the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [female employee] who he alleges [was] treated

7

> more favorably." The similarities between the plaintiff and the female employee must exist "in all relevant aspects of their respective employment circumstances." Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated.

*Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citations omitted). In the current case, Plaintiff is not similarly situated with Esparza. Employees do not need to have identical records to be similarly situated, but Plaintiff's work experience is sufficiently different from Esparza's to preclude them from being considered similarly situated. In particular, Esparza has held managerial positions continuously since 1990. In contrast, Plaintiff has not held a permanent managerial position since 1994. This was one fact Jarvi used in determining that Esparza was a stronger candidate than Plaintiff. Defendant's Exh. 48. Since Plaintiff and Esparza are not similarly situated, Plaintiff fails to meet the fourth prong and cannot establish a prima facie case.

Even if Plaintiff had established a prima facie case, his claim would fail because Defendant has articulated legitimate, non-discriminatory reasons for the selection of Esparza. Jarvi claims she selected Esparza as the best candidate based on her application, her performance as the acting Manager of Detroit Vehicle Maintenance, and the strength of her interview. Defendant's Exh. 5 at 78. Thus, to defeat Defendant's motion for summary judgment, Plaintiff must demonstrate that those reasons were pretextual.

The comment made by Jarvi regarding diversity does not demonstrate pretext. The Sixth Circuit has held that isolated comments such as this are not sufficient to overcome an employer's legitimate, nondiscriminatory reasons. In *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989), the plaintiff, in support of her age discrimination claim, alleged that her supervisor had remarked that he "needed younger blood." *Id.* at 314. The court held that "[t]his solitary remark, however, was insufficient to create an issue of material fact which would preclude entry of summary

8

judgment in favor of the defendant." *Id.* The court noted that the comment was abstract, made in a group, and not directed at any particular individual. *Id.* Likewise, Jarvi's comment about diversity was abstract, made in a group, and not directed at Plaintiff. Therefore, the comment is not sufficient to demonstrate pretext.

Plaintiff also claims that Jarvi was going through a difficult divorce, seemed to relate better to female employees, and gave Plaintiff the worst equipment. Plaintiff's Exh. A at 56. Jarvi's divorce and her attendant feelings do not demonstrate that her legitimate, non-discriminatory reasons for selecting Esparza were pretextual. Furthermore, Plaintiff does not claim that Jarvi gave all males inferior equipment. That fact that Jarvi allegedly gave Plaintiff inferior equipment does not establish that she harbored animosity towards him *as a male*.

Plaintiff further claims that he was far more qualified for the position than Esparza. However, Plaintiff has not demonstrated that his qualifications were objectively far superior to Esparza's. Although Plaintiff had worked for the Postal Service longer than Esparza, both had long periods of Postal Service employment, 34 years for Plaintiff and 28 for Esparza. Plaintiff had a more extensive technical background than Esparza, but Esparza had more current managerial experience. In addition, Jarvi found that Esparza had performed better than Plaintiff as the acting Manager of Detroit Vehicle Maintenance. Defendant's Exh. 36. Significantly, the Sixth Circuit has held that employers have great flexibility in selecting managers, "because of the nature of such a position." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). In addition, the candidates were ranked in part on their interview performance. Ward, the male human resources representative who was present at the interviews, confirmed that Plaintiff was the least engaging of the applicants. Defendant's Exh. 6 at 16. The Court is not in a position to override the judgment of Jarvi and Ward.

The role of the Court is "to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

Plaintiff also claims that Jarvi's decision to re-post the position, after the interviews of Plaintiff and Carmichael, and the lengthy vacancy period, a year and a half, demonstrate pretext. The Court finds this argument unpersuasive. Plaintiff is implying that Jarvi kept the position open for a long period of time in order to find a female candidate. However, there is no evidence to support that conclusion. Jarvi has been responsible for selecting applicants fourteen times since 1994, and nine of the persons selected were male. Defendant's Reply Brief at 3. Jarvi stated that she first re-posted the position because she felt there were more qualified candidates available. Plaintiff's Exh. C at 11. In addition, Jarvi was not responsible for the second posting; it was ordered by USPS Headquarters in an attempt to accommodate other employees whose offices had been closed.

Plaintiff also argues that Jarvi's selection of Esparza violated Postal Service procedures, thus demonstrating pretext. It is true that an employer's failure to follow its own procedures can constitute evidence of pretext. *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. Appx. 387, 394 (6th Cir. 2005). However, in this case Plaintiff has failed to establish a procedural violation that demonstrates pretext. Plaintiff points to the "120 day rule," which states that an employee is ineligible for a posted position if the employee has filled the position in a temporary capacity for more than 120 days. Esparza became the acting Manager of Detroit Vehicle Maintenance in July 2001. Thus, her appointment in February 2002 exceeded the 120 day limit, which ended in

November 2001. However, Esparza first applied for the position in August 2001, well within the 120 day period. Postal Service Headquarters then required Jarvi to re-post the position. Since the position was re-posted in November 2001, after Esparza's 120 day period had ended, Esparza asked Jarvi to request a variance from the area office. The variance was granted. Defendant's Exh. 5 at 26-27. Plaintiff has not shown that the area office exceeded its authority in granting the variance. Thus, there was no procedural violation demonstrating pretext.

Finally, Plaintiff claims that Esparza's alleged poor performance after her selection as Manager of Detroit Vehicle Maintenance demonstrates pretext. Plaintiff has not provided any authority for this proposition; the case cited by Plaintiff, *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391 (6th Cir. 1990), dealt with the plaintiff's superior qualifications before the selection was made. Plaintiff points to the poor evaluations Esparza received in model audits conducted after her appointment as Manager of Detroit Vehicle Maintenance. However, the Sixth Circuit has noted that there is a distinction "between a poor business decision and a reason manufactured to avoid liability." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)). Pretext is only shown when "the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Id.* This is not the case here; Esparza's management experience and her performance as acting Manager of Detroit Vehicle Maintenance were legitimate, non-discriminatory reasons for her selection.

Since Plaintiff cannot prove pretext, his gender discrimination claim fails as a matter of law, and Defendant is entitled to summary judgment on this issue.

**2.     Retaliation for prior EEO Activity**

To establish a prima facie case of Title VII retaliation a plaintiff must show that:

11

> (1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Plaintiff has met the first three elements of the prima facie case. He filed an EEO complaint in 1994, alleging racial discrimination. Plaintiff alleges Jarvi knew of the complaint, and Defendant has not denied this. Finally, Jarvi took adverse employment action against Plaintiff by selecting Esparza as Manager of Detroit Vehicle Maintenance.

However, Plaintiff cannot meet the fourth element of the prima facie case, since he cannot establish that there was a causal connection between his EEO complaint and the selection of Esparza. To establish a causal connection, Plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quotation omitted). In *Hafford v. Seidner*, 183 F.3d 506, (6th Cir. 1999), the defendant took disciplinary action against the plaintiff two to five months after the plaintiff filed an EEO complaint. *Id.* at 515. The court held that "[a]bsent additional evidence, this loose temporal proximity is insufficient to create a triable issue." *Id.* In the current case, the temporal proximity is even greater; Jarvi selected Esparza almost eight years after Plaintiff's EEO complaint. In addition, Plaintiff has presented no evidence linking the selection of Esparza to his EEO complaint.

Plaintiff alleges the Postal Service determined that Plaintiff would never be put in a management position. However, the evidence put forth by Plaintiff shows that this alleged policy was due to the Dearborn shooting, not to Plaintiff's EEO complaint. Plaintiff's Exh. D at 19. While

Plaintiff claims that Postal Service employees unfairly blamed him for the shooting, he never alleges that anyone ever made a negative comment to him regarding his EEO complaint. The Court's role is to determine if a violation of federal law occurred, not whether an employer's actions were right or wrong in an abstract moral sense. Since Plaintiff has produced no evidence linking the selection of Esparza to his EEO complaint, he cannot establish a prima facie case, and his retaliation claim fails as a matter of law.

In addition, even if Plaintiff had established a prima facie case, Defendant has provided legitimate, non-discriminatory reasons for the selection of Esparza, as discussed above. For the reasons previously discussed, Plaintiff cannot show pretext. Thus, his claim fails as a matter of law.

## V.  CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's action is HEREBY DISMISSED with prejudice.

IT IS SO ORDERED.


                                          s/Lawrence P. Zatkoff
                                          LAWRENCE P. ZATKOFF
                                          UNITED STATES DISTRICT JUDGE

Dated:  October 24, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 24, 2005.

s/Marie E. Verlinde
Case Manager
(810) 984-3290